[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
DECISION ON MOTION TO SUPPRESS
CT Page 13771
Warren Maxwell, Esq., Sr. Assistant State's Attorney, For theState of Connecticut.
Albert B. Harper, Esq., Attorney at Law, For the Defendant.
THE COURT: Good afternoon. I do want to enter my rulings with respect to the Motion to Suppress. This was dated September fourth, 1996. And I've had a chance to review the facts that were presented at the hearing, as well as the various cites alluded to by counsel.
First of all, taking the items seized from the third-floor porch, and this would include the money, the bag, and the gun.
MR. MAXWELL: Excuse me, Your Honor.
THE COURT: Yes.
MR. MAXWELL: There's one other item I forgot to mention. The face cover, the kerchief, was also found there. The money was wrapped in it.
THE COURT: That is with respect to the third-floor porch?
MR. MAXWELL: Yes.
THE COURT: All right. This — this is with reference to any of the items taken —
MR. MAXWELL: Okay.
THE COURT: — in connection with the third-floor porch.
First of all, The Court finds that 188 Campfield Avenue is a three-family residence, with each tenant occupying a separate floor, and each floor having a separate enclosed porch for their personal use, though each porch is accessible to other tenants by means of the rear steps.
Here, though, the third-floor porch area was accessible, in this case, where the third-floor porch area was accessible to other tenants, it was subject to the exclusive control of the CT Page 13772 third-floor tenants, and lawful access could be had only with the permission of the third-floor tenants.
Now, apparently, the defendant lived with Ms. Ruff on the second floor. And, here, the defendant had no possessory rights to the items seized, by his own admission, and there was no evidence of any possessory interest in the — the porch area searched. Thus, there's no standing to contest the search of the third-floor porch.
Evidence that Ms. Ruff could use the dryer in the porch area, with permission of the tenants, hardly establishes any possessory rights or reasonable expectation of privacy in the area searched, particularly on the part of this defendant. So, there's no standing to contest, with respect to those items on the third porch — on the third-floor porch.
With respect to the items seized from the second floor, that at least include the jacket, the scarf, and the bank deposit slip, this Court finds the testimony of Officers Grodecki and Garten to present the more credible version of the events, with respect to consent.
Clearly, the defendant was a strong suspect for the robbery when the police arrived at 188 Campfield Avenue. And I'm satisfied they successfully — that is, the police, successfully used the influence of defendant's parole officer to get his cooperation in gaining entrance to the apartment and walking through the apartment looking for other individuals or weapons. And it's during this general search that the jacket and the scarf were observed.
The defendant's consent was freely and voluntarily given, as a result of the parole officer's influence, and not because guns were drawn for protection when the police — when the door was first opened for the police. Though the defendant's parole status and the parole officer's conduct were certainly significant factors in the defendant's decision to cooperate, there's no credible evidence that threats were made, or that the cooperation was coerced, or that the defendant's will was overborne by anyone or any conduct, particularly given his prior history and experience with the system.
I find that Officer Grodecki's conduct in remaining on the premises, to secure the premises for a subsequent search, and CT Page 13773 inadvertent discovery of the deposit slip in the toilet bowl, to be reasonable, under the circumstances, and not to constitute police misconduct of any sort. If it were not to the extent that the subsequent discovery of the deposit slip was beyond the scope of defendant's consent, there was more than sufficient information in the subsequent affidavit for a search warrant, independent of any reference to the deposit slip, for the warrant to be signed and the search executed, and the discovery of the deposit slip made, so that independent source doctrine would control under those circumstances.
And for all these reasons, the Motion to Suppress is denied.
THE HONORABLE ROLAND D. FASANO, JUDGE
 CERTIFICATION
I hereby certify that the foregoing is a true and correct transcription of an excerpt from the tapes of the above-entitled matter, heard before the Honorable Roland Fasano, Judge of the Superior Court of the Hartford/New Britain Judicial District, on the 2nd day of December, 1997, at Hartford, Connecticut.
Dated this 4th day of December, 1997, at Hartford.
Judith Moquin Court Monitor